SOMMERVILLE, J.
This is an ordinary suit by a landlord against his tenant and the sureties on the lease and rent notes, coupled with a provisional seizure.
The provisional seizure resulted in the placing in the hands of the sheriff a small amount of money which is held by him awaiting the determination of this suit.
Only tile original parties to the transaction are involved in this suit. No third person is a party hereto, and there is no question of the transfer of the rent 'notes sued upon “in due course.” They are sued upon by the original holder.
N. L. Merks, the tenant, died before the suit was filed, and his succession filed an exception to the suit, which exception was sustained, and the suit was dismissed as to it. A. Schmidje, one of the sureties on the rent notes, died, and,, his succession having excepted to the suit, it was dismissed as to it. The only defendant before the court is the cosurety, Henry Worner. He filed an exception of no right of action, which was overruled, and, answering, admitted his signature to the lease and upon the back of the rent notes, but denied all liability thereon, alleging that the lease and notes were signed by him in fraud and in error. He further pleaded in his answer an exception of no cause or right of actioip
There was judgment for plaintiff and against defendant Worner for the amount sued for, and the latter has appealed.
[1] In a supplemental brief defendant Worner said with reference to the exception of no right or cause of action:
“The exception is leveled at the failure of the appellee to protest the notes sued upon, and it is contended that, not being protested, no recovery can be claimed or had against the indorser.”
The lease was attached to and made a part of the petition. The rent notes were not attached to or made parts of ..the petition. And an examination of the lease, which forms part of the petition, shows that it is stated that the lease is for the premises 853 Ba *181 ronne Street, at a monthly rent of $250, for which 35 rent notes, “not negotiable,” were to be given. And as the trial court was governed for the purposes of the exception by the allegations contained in the petition and the lease annexed thereto, and as it was unnecessary to protest the “nonnegotiable” rent notes, or to allege that they had been protested, the exception was properly overruled.
Defendant further alleges in his supplemental brief that the notes sued upon were not identified with the lease sued upon, but it does not appear that the notes were offered in evidence on the trial of the exception of no right of action, and the judgment overruling the exception remains correct.
On the trial of the case there was some evidence offered to support this defense, which will be hereafter considered.
Defendant alleged in his answer that the lease and the rent notes “were signed by him in fraud and error.” That “with full knowledge and consent of the plaintiff, who prepared a lease of.the said property, which was so signed by both parties, but upon some revisions of the terms of the lease being agreed upon, a new lease was prepared, and respondent requested to sign same, he being at the time informed that the said Sehmidje (the cosurety) would likewise sign same; and upon this assurance given him by the plaintiff, or his proper representatives, said lease and rent notes were signed, but under the distinct agreement and understanding that the said Sehmidje would likewise sign same.
“Respondent further shows that in fraud of his rights, the said Sehmidje did not sign said •lease, although he had indorsed the said rent notes, which were the rent notes made under the original lease, which had been abrogated, to which fraud the said plaintiff was a party, and he hence shows that his signature on the said lease and rent notes was obtained in error, for which he is not bound.”
Defendant offered no evidence whatever to sustain the allegations just taken from his petition, and he thus failed entirely in this defense.
While on the witness stand defendant himself admitted that he had never seen the plaintiff, the landlord, or had any communication from him, or any one representing him. Therefore plaintiff was not aware of any contract or understanding had between parties defendant here; and he therefore did not consent thereto.
[2] The only understanding or agreement that defendant testified to was one between himself and Sehmidje, his cosurety. Schmidje is now dead, and defendant, says that Sehmidje had agreed to sign the lease and rent notes as surety; and, while he signed the notes, he failed to sign the lease, which constituted the fraud practiced upon him, Worner. The reason why Sehmidje did not sign the lease is explained by the witnesses showing that when it was taken to him for his signature he was in a dying condition, and could not sign same.
It appears that when Morks became the tenant of the premises he asked Worner to become a surety on the lease, and Worner consented on condition that Sehmidje, who was on the former lease as surety, and who was in some way interested in the business carried on on the premises, would also sign as surety. The lease so made was signed by the tenant and his sureties, and the 35 rent notes were not signed by them. When they' were sent to the plaintiff, he refused to accept the notes in such condition. The owner also returned the lease because he wanted it written on the same printed form as his former lease had been written. Thereupon the tenant had the lease rewritten on the required form, signed it, and had the rent notes indorsed -and returned to plaintiff, excepting that the lease was not signed by Sehmidje, who had died in the meantime.
The lease and the rent notes were signed by all of the parties in interest, and without *183 error or fraud having been practised upon defendant or any one else; and the rent notes are fully identified with the leasd sued upon.
[3] It appears that the Anheuser-Busch Company was largely interested in the business which was carried on on the premises under the old lease, upon which Sclimidje, the rice president of the brewing company, was one of the sureties. When the real estate changed hands and Pox became the owner and lessor, Schmidje asked Pox to 'be released on the lease which was to be substituted for the old lease. This Pox absolutely refused to do, saying that he would not release any one whom he had as surety, and it was. arranged by the tenant that Schmidje and Worner would sign the new lease, which was to run for the unexpired term of the former one. Pox stated that he would subordinate Schmidje to the other persons bound in solido on the lease; but, in so acting, Pox did not know of any arrangement between Schmidje and Worner whereby Worner would sign as surety only in the event that Schmidje would also sign as surety. And Pox therefore, not being made aware that there was a condition made to obtain Worner's signature, is in no way restricted in prosecuting Worner, or any one who was bound in solido on the rent notes. The contract of lease sued upon was signed by Worner when it was given to Pox, together with the rent notes, and he (Pox) had the right to proceed in the manner that he has proceeded.
[4] It is idle for Worner to argue that the rent notes are negotiable instruments, and should have been protested before the institution of a suit against him for such collection.. His signature is attached to the lease wherein it is recited that the rent notes are not negotiable; and he is bound by his own allegations. That stipulation in the lease was for his protection on the rent notes. 1-Ie is bound by it. And in that same instrument it is stated:
“And now comes Henry Worner, who hereby makes himself surety and party to this contract of lease, and binds himself in solido, with lessee, for the faithful performance of all obligations tc be performed on the part of the lessee.”
He is therefore bound as surety and in no other way; and the judgment against him is correct.
It is said in the 8 O. J. .p. 196, § 327:
“It is elementary that when separate writings are executed' between the same parties at the same time, in the course and as parts of the same transaction, and intended to accomplish the same general object, they are to be construed as one and tiic same instrument. In accordance with this principle notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract in a controversy between the original parties to the instrument or persons standing in their situation, or chargeable with notice of the contemporary instruments, especially where the note contains an express reference to the agreement, or where the agreement relates to a consideration yet to be earned.”
The judgment appealed from is affirmed.